# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 22, 2024

## STATE OF TENNESSEE v. ROBERT ANDREW DUNNIVANT

### Appeal from the Criminal Court for Knox County
### Nos. 123139, 125868    Steven Wayne Sword, Judge

_____

### No. E2023-01652-CCA-R3-CD
_____

The Defendant, Robert Andrew Dunnivant, pled guilty to aggravated assault, reckless aggravated assault, and two counts of domestic assault. As part of the plea, the parties agreed that the Defendant would be sentenced to an effective term of ten years but that the trial court would determine the manner of service. Following a sentencing hearing, the trial court denied an alternative sentence and imposed a sentence of full confinement. On appeal, the Defendant argues that the trial court should have granted an alternative sentence. Upon our review, we respectfully affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right;
### Judgments of the Criminal Court Affirmed

TOM GREENHOLTZ, J., delivered the opinion of the court, in which JILL BARTEE AYERS and KYLE A. HIXSON, JJ., joined.

Eric M. Lutton, District Public Defender; Jonathan Harwell, Assistant District Public Defender (on appeal); and George H. Waters and Preston Pierce, Assistant District Public Defenders (at sentencing), Knoxville, Tennessee, for the appellant, Robert Andrew Dunnivant.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General, and J. Katie Neff, Assistant Attorney General; Charme P. Allen, District Attorney General; and Christy Smith Caviness, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

### A.    APRIL 2022 INCIDENT

On April 27, 2022, the Defendant was intoxicated and verbally abused his girlfriend, Kristin Nelson-Smith.  After he was told to leave by Ms. Nelson-Smith, the Defendant texted his ex-girlfriend, Shelby Dunn, to come pick him up.  Ms. Dunn picked up the Defendant, and he was also aggressive with her, so she made a U-turn to take him back to Ms. Nelson-Smith's house.  As she was making the U-turn, the Defendant pulled her emergency brake.  Ms. Dunn attempted to get the Defendant out of the car, but he refused to leave.

Ms. Dunn continued driving towards Ms. Nelson-Smith's home, and the Defendant began punching Ms. Dunn in the face.  At some point, Ms. Dunn possibly lost consciousness, and the Defendant again pulled the emergency brake.  The car struck a utility pole and flipped onto its side.  Ms. Dunn sustained significant injuries in the crash. As a result of these events, a Knox County grand jury charged the Defendant on December 1, 2022, with the offenses of reckless aggravated assault and domestic assault.[1]

### B.    JULY 2023 INCIDENT

While the Defendant was on pretrial release from the April 2022 incident, the Defendant and Ms. Nelson-Smith ended their relationship.  They also ceased cohabiting, though the Defendant still occasionally stayed the night.

On July 28, 2023, the Defendant was intoxicated and once again stayed at Ms. Nelson-Smith's home.  The two argued, and the Defendant eventually grabbed her phone and began to look through it.  He then broke her phone, threw her to the ground, and punched her in the face.  When she got up from the ground, he grabbed her by the throat and slung her around, restricting her ability to breathe.

---

[1]    The grand jury also charged the Defendant with the offenses of aggravated assault, reckless endangerment, and attempted second-degree murder.  These charges were later dismissed by the State and are not at issue in this appeal.

Ms. Nelson-Smith eventually escaped the Defendant and sought help from her neighbors. She had large bruises on her face, arms, shoulders, and a broken nose. The Defendant eventually fled the residence after ripping a television from the wall and destroying Ms. Nelson-Smith's cameras. As a result of these events, the State filed a criminal information on September 14, 2023, charging the Defendant with the offenses of aggravated assault and domestic assault.

### C.    PLEA AND SENTENCING HEARING

On the same day that the criminal information was filed, the Defendant entered a plea of guilty to both sets of charges consisting of aggravated assault, reckless aggravated assault, and two counts of domestic assault. In the plea agreement, the parties agreed to an aggregate sentence length of ten years. However, they asked the trial court to determine the manner in which the sentence would be served.[2]

On November 9, 2023, the trial court convened a sentencing hearing. During the hearing, the State introduced the presentence investigation report. This report revealed that the Defendant had two prior convictions for driving under the influence, two convictions for driving on a revoked license, and a conviction for theft. Additionally, the presentence report identified a 2010 domestic violence charge that had been dismissed.

In addition, the presentence report confirmed that the Defendant first used alcohol at age seventeen and that he resided at a sober living house for approximately three months between November 2022 and January 2023. The Defendant also reported fair mental health, a good support network from his family, and previous employment as a painter, ground worker, and temporary worker.

Ms. Dunn, the victim in the April 2022 incident, testified at the sentencing hearing. She testified about several incidents with the Defendant when he was intoxicated that were never charged. In several of these instances, the Defendant threatened Ms. Dunn's life. However, Ms. Dunn did not testify about the April 2022 incident.

---

[2]    With respect to the April 2022 incident, the Defendant agreed to concurrent sentences of four years for reckless aggravated assault and eleven months and twenty-nine days for domestic assault. As to the July 2023 incident, he agreed to concurrent sentences of six years for aggravated assault and eleven months and twenty-nine days for domestic assault. The parties agreed that the sentences would be aligned consecutively, resulting in a total effective sentence of ten years.

Ms. Nelson-Smith, the victim in the July 2023 incident, also testified at the hearing. She discussed several violent incidents between her and the Defendant that were not charged. She also testified that during the July 2023 incident, she believed that the Defendant was going to kill her.

Finally, the Defendant made an allocution to the court. He apologized to both victims and stated that his drinking of alcohol led him to lose his temper on these occasions. He further stated that there were "plenty of previous instances" where he was not intoxicated and did not grow angry, but during these instances, he "lost control because [he] was intoxicated."

### D.    SENTENCE AND APPEAL

Following the hearing, the trial court denied the request for an alternative sentence and ordered that the Defendant serve the full ten-year sentence in confinement. Before imposing the sentence, the court considered the arguments made by counsel, the Defendant's sentencing memorandum, and the proof presented at the sentencing hearing.

The court noted that it was required to consider certain factors to determine whether the Defendant should receive an alternative sentence. The court first considered the Defendant's criminal history. It considered the number of prior convictions, the time period over which they occurred, the geographic areas, and the number of separate victims. The court found the recent convictions and uncharged events were concerning but concluded that this history "would not be so bad that [it] warrants confinement by itself."

Next, the court examined the issue of deterrence. Concluding that few people were likely aware of this specific case, the court gave this factor little weight. The court then examined whether less restrictive means had been tried recently in the Defendant's history. The court stated that the Defendant had been on probation previously but had done "nothing to really address serious issues." The court also noted that the Defendant had taken responsibility for his actions, had a treatable need, and had some "potential for rehabilitation."

Finally, the trial court considered whether confinement was necessary to avoid depreciating the seriousness of the offense. The court stated, "Obviously, these are incredibly serious offenses. The legislature has, as I said, told us how serious they are by making the aggravated assault [a] 100-percent sentence." Specifically, the trial court expressed concern that the Defendant committed two separate aggravated assaults on two different victims and that "realistically their lives were in danger." The court explained

4

further that although the Defendant had a "treatable need" with his substance use issues, it questioned whether another treatment attempt "really could stop him from harming somebody more serious [sic]." Ultimately, the court concluded that an alternative sentence would "significantly depreciate" the seriousness of the offenses and imposed a sentence of full incarceration.

The Defendant filed a timely notice of appeal eighteen days later on November 27, 2023.

## STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). Our supreme court has recognized that we review a trial court's sentencing determinations for an abuse of discretion, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).

This standard of appellate review applies to a trial court's decision to grant or deny alternative sentencing. *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012). As the supreme court has clarified, "a trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014).

In this context, "this deferential standard of review is subject to an important caveat: the trial court must 'place on the record any reason for a particular sentence.'" *State v. Sheets*, No. M2022-00538-CCA-R3-CD, 2023 WL 2908652, at *5 (Tenn. Crim. App. Apr. 12, 2023) (quoting *Bise*, 380 S.W.3d at 705), *no perm. app. filed*. After all, "appellate courts cannot properly review a sentence if the trial court fails to articulate in the record its reasons for imposing the sentence." *Bise*, 380 S.W.3d at 706 n.41.

## ANALYSIS

In this appeal, the Defendant argues that the trial court erred when it ordered him to serve his ten-year sentence in custody instead of granting an alternative sentence to incarceration. Specifically, he makes two related arguments: first, that the trial court incorrectly considered and interpreted a recent legislative change, and second, that the trial

court did not make a finding that the circumstances of the offenses were especially egregious. We respectfully disagree.

## A. PRESUMPTION OF REASONABLENESS

"Any sentence that does not involve complete confinement is an alternative sentence." *State v. Sanders*, No. M2023-01148-CCA-R3-CD, 2024 WL 1739660, at *3 (Tenn. Crim. App. Apr. 23, 2024) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. July 17, 2024). Our supreme court has recognized that "[t]he [Sentencing] Act requires a case-by-case approach to sentencing, and [it] authorizes, indeed encourages, trial judges to be innovative in devising appropriate sentences." *Ray v. Madison County*, 536 S.W.3d 824, 833 (Tenn. 2017) (citation and internal quotation marks omitted). "[I]ndividualized punishment is the essence of alternative sentencing," and the punishment imposed should fit the offender as well as the offense. *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994).

Pursuant to Tennessee Code Annotated section 40-35-103(1) (2019), sentences involving confinement may be ordered if they are based on one or more of the following considerations:

(A) whether "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct";

(B) whether "[c]onfinement is necessary to avoid depreciating the seriousness of the offense[,] or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses"; or

(C) whether "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]"

And, of course, the trial court must consider the defendant's potential for rehabilitation in determining whether to impose an alternative sentence. *See* Tenn. Code Ann. § 40-35-103(5) (2019).

Even if a defendant is eligible for probation, the burden of establishing suitability for probation rests with the defendant. *See* Tenn. Code Ann. § 40-35-303(b). This burden

6

also includes showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008). To that end, when considering whether a defendant has met this burden, the trial court should consider "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017); *State v. Wilbourn*, No. W2022-01199-CCA-R3-CD, 2023 WL 4229352, at *4 (Tenn. Crim. App. June 28, 2023) (citation and internal quotation marks omitted), *no perm. app. filed*.

In this case, the trial court ordered that the sentence be served in confinement in the Department of Correction. In so doing, the trial court stated that it had considered the presentence investigation report, the risk and needs assessment, and the proof introduced at the sentencing hearing. Further, it considered the facts and circumstances surrounding the offenses, the nature of the criminal conduct involved in the case, and the need for deterrence. Finally, the court considered the Defendant's criminal history, potential for rehabilitation, and allocution.

Considering this information and the factors set forth in Tennessee Code Annotated section 40-35-103, the trial court emphasized that the Defendant had committed multiple offenses against different victims, which indicated an escalating pattern of violent behavior. It observed that the Defendant's conduct was "extremely serious violent behavior" and that "realistically [the victims'] lives were in danger." It also considered that the Defendant's past and present crimes were caused by alcohol use and that he was at a moderate risk of reoffending.

We conclude that the trial court acted within its discretion in imposing a sentence of incarceration. The trial court identified the correct standards of law that applied to its consideration of alternative sentencing. It considered and weighed the purposes and principles of sentencing, as well as the appropriate statutory and common-law factors for alternative sentencing. It then made a reasoned choice between acceptable alternatives after considering the relevant facts on the record. Even if reasonable minds could disagree with the propriety of the decision to deny probation—and we have no such disagreement—we conclude that the trial court acted within its discretion to deny an alternative sentence and impose a sentence of full incarceration. Because the trial court's sentence reflects a decision based upon the purposes and principles of sentencing, its decisions are entitled to a presumption of reasonableness. *See Caudle*, 388 S.W.3d at 279.

**B.** **LEGISLATIVE INDICATIONS OF SERIOUSNESS**

To counter the presumption of reasonableness, the Defendant offers two arguments, which we take in turn. First, he argues that the trial court erroneously suggested that the legislature disfavored probation for aggravated assault by noting that they recently required defendants to serve one hundred percent of their sentence. The Defendant asserts that because the legislature did not remove probation eligibility for aggravated assault, the trial court erred in considering what it believed to be the legislature's view of the offense. We respectfully disagree that the trial court's observation removes the presumption of reasonableness.

When discussing whether confinement is necessary to avoid depreciating the seriousness of the offense, the trial court stated, "And obviously these are incredibly serious offenses. The Legislature has, as I said, told us how serious they are by making the aggravated assault [a] 100-percent sentence." It is true that "[n]either the release eligibility date nor good time credits are listed as matters which may be considered in arriving at a sentence." *State v. Jenkins*, No. 01C01-9612-CC-00520, 1998 WL 199962, at *3 (Tenn. Crim. App. Apr. 23, 1998), *perm. app. denied* (Tenn. Dec. 7, 1998) (so recognizing in the context of denying an alternative sentence). However, the context of the trial court's observation is important.

Although the trial court noted that the legislature had recently increased the release eligibility for aggravated assault offenses, it did so only to observe that they are "incredibly serious offenses" generally. It did not go further to reason that the legislature disfavored probation for these offenses. Instead, it focused on how the particular crimes were committed, considering that the Defendant assaulted and terrorized multiple victims, placed their lives in danger, and continued to engage in criminal conduct—evidencing an escalation in seriousness due to his alcohol use. In other words, the court made an individualized sentencing determination that probation was inappropriate based on the particular facts of these cases.

Nothing about the trial court's observations suggests that it was improperly using release eligibility or legislative action such that the presumption of reasonableness would be overcome. As such, the Defendant is not entitled to relief on this ground.

8

### C. HEIGHTENED STANDARD OF REVIEW

Second, the Defendant argues that the trial court did not make the proper findings that the circumstances of the offenses were committed in a more egregious manner than the plain elements of the offenses. Specifically, he argues that the trial court did not find that the circumstances of the offenses as committed were "especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree." Additionally, the Defendant alleges that the trial court did not find that this consideration outweighed all other factors favoring an alternative sentence.

The State responds that the trial court's order was based on multiple grounds and that, as such, it was not required to make additional findings. It also asserts that the record supports the trial court's finding that incarceration was necessary to avoid depreciating the seriousness of the offenses. We agree with the State.

When a trial court relies *solely* upon the consideration that confinement is necessary to avoid depreciating the seriousness of the offense, "the circumstances of the particular crime committed by the defendant must be evaluated." *Trent*, 533 S.W.3d at 292. Generally, to deny alternative sentencing based solely on the seriousness of the offense, "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring a sentence other than confinement." *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006). As such, "before a trial court can deny probation solely on the basis of the offense itself, the circumstances of the offense *as particularly committed in the case under consideration* must demonstrate that the defendant committed the offense in some manner more egregious than is contemplated simply by the elements of the offense." *Trent*, 533 S.W.3d at 292-93 (emphasis in original); *State v. Moreno*, No. W2023-00316-CCA-R3-CD, 2024 WL 836112, at *6 (Tenn. Crim. App. Feb. 28, 2024) (same), *no perm. app. filed*.

However, these additional considerations apply only when the need to avoid depreciating the seriousness of the offense is the *sole* consideration by which a trial court denies an alternative sentence. *Sihapanya*, 516 S.W.3d at 476. When a trial court instead denies probation based upon a combination of factors, as it did in this case, and those factors are supported by the record, "the heightened standard of review" is not applicable. *Id.* Most often, the combination of factors involves the need to avoid depreciating the seriousness of the offense and deterrence, as did *Sihapanya*. However, the same is also true when a trial court imposes a sentence of incarceration based upon either the need to

9

avoid depreciating the seriousness of the offense or deterrence, along with other factors in Tennessee Code Annotated section 40-35-103(1) as well. As this court has explained,

> [U]nder [*State v. Hooper*, 29 S.W.3d 1, 14 (Tenn. 2000)] and *Trotter*, if only one factor found in Tennessee Code Annotated section 40-35-103(1) is utilized by the trial court, the trial court must make additional findings. If, however, the trial court bases the denial of alternative sentencing on more than one factor, we review the denial to determine if the trial court abused its discretion.

*State v. Lester*, No. M2014-00225-CCA-R3-CD, 2014 WL 5501236, at *5 (Tenn. Crim. App. Oct. 31, 2014) (not applying a heightened standard of review when the need for deterrence was considered with the defendant's criminal history and previous probationary sentences), *perm. app. denied* (Tenn. Feb. 13, 2015); *see also, e.g.*, *State v. White-McCray*, No. E2020-01735-CCA-R3-CD, 2022 WL 2801005, at *5 (Tenn. Crim. App. July 18, 2022) (not applying a heightened standard of review when "the trial court found that all three considerations in Tennessee Code Annotated section 40-35-103(1) applied"), *no perm. app. filed*; *State v. O'Brien*, No. E2014-02248-CCA-R3-CD, 2015 WL 5179190, at *4 (Tenn. Crim. App. Sept. 4, 2015) (not applying a heightened review when the need for deterrence was combined with the defendant's criminal history and history of probation violations), *no perm. app. filed*.

In this case, the trial court's decision to deny probation was based on a combination of considerations. In addition to its concerns about significantly depreciating the seriousness of the offenses, the trial court carefully considered the Defendant's history of criminal behavior. It analyzed the number of prior convictions, the thirteen years over which they occurred, the geographic area of the actions, and the number of separate victims. Although the trial court concluded that the criminal history did not warrant confinement "by itself," it is clear that this factor had weight and contributed to the court's decision to deny probation. *See* Tenn. Code Ann. § 40-35-103(1)(A), (B).

The trial court also specifically considered the Defendant's risk to reoffend. It reviewed the risk and needs assessment and concluded that the Defendant was at a moderate risk to reoffend. The court also discussed the Defendant's alcohol use as a cause of his criminality and observed that future use may result in him harming someone more seriously, even after additional treatment. *Cf.* Tenn. Code Ann. § 40-35-103(5). Although the court did not assign specific weight to this factor in relation to the others, it is clear that the Defendant's risk to reoffend contributed to the court's decision to deny probation.

Because the trial court based its order of confinement on multiple grounds set out in Tennessee Code Annotated section 40-35-103(1), the heightened standard of review required by *Trotter* and *Trent* does not apply. As such, the Defendant has failed to overcome the presumption that the trial court's sentence of incarceration is reasonable. He is not entitled to relief on this ground.

## CONCLUSION

In summary, we hold that the trial court acted within its discretion in denying the Defendant's request for an alternative sentence to incarceration. Accordingly, we respectfully affirm the trial court's judgments.

_____
TOM GREENHOLTZ, JUDGE